[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-12840

Non-Argument Calendar

_____

In re: ELIZABETH RICHERT,

                                                      Debtor.

_____

ELIZABETH RICHERT,

                                                      Plaintiff-Appellant,

*versus*

KATHLEEN WHITE MURPHY,
THOMAS WHITE,

                                                      Defendants-Appellees.

_____

2                    Opinion of the Court                    23-12840

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:23-cv-20779-RNS,
Bkcy No. 1:22-bk-16713-RAM

_____

Before NEWSOM, GRANT, and ANDERSON, Circuit Judges.

PER CURIAM:

Elizabeth Richert seeks the protections of federal bankruptcy law from a variety of creditors. On appeal, the district court affirmed several orders entered by the bankruptcy court. Now, Richert argues here that the bankruptcy court erred in granting a creditor's extension of time to respond, in converting her bankruptcy proceeding, and in allowing one of the claims against her. We lack jurisdiction to hear the first of these appeals, and we affirm the other orders.

**I**

In August 2022, Richert filed a petition for Chapter 13 bankruptcy in the Southern District of Florida. But the roots of this dispute go back much further. Among the creditors who sought to enforce claims against Richert in the bankruptcy proceeding were Kathleen White Murphy and Thomas White. Their claims arose from a long-running—and highly litigious—family feud, centered on the proceeds of a property and trust in Illinois. Murphy and White submitted to the bankruptcy court memorandum opinions and orders from the Northern District of Illinois addressing

Richert's conduct as trustee. They sought to enforce that court's award of monetary damages and attorney's fees against Richert for her breach of fiduciary duty, which the court found "involved reprehensible conduct and was committed with an evil mind."

Richert's bankruptcy did not proceed smoothly. The bankruptcy court entered an order that directed her to file a Chapter 13 plan, make five monthly payments, provide documents verifying her claimed interest in various properties, file amended schedules, and appear for a required bankruptcy examination. Richert, however, filed a plan that relied on selling the property in dispute in the Illinois case, as well as on trust income for which she had provided no proof other than documents so heavily redacted that they provided no information for the bankruptcy court. Moreover, she failed to respond to material questions during her bankruptcy examination—including about the source of her asserted income—and she admitted that the schedules she had filed were inaccurate.

As a result of Richert's lack of compliance, the bankruptcy court involuntarily converted Richert's proceedings from Chapter 13 to Chapter 7, at Murphy's and White's request. The court also denied Richert's motions to reconsider and to reconvert. The bankruptcy court eventually overruled Richert's objection to Murphy's and White's claim and held that the claim was "valid and allowed."

In the midst of this bankruptcy proceeding, Jeffrey Jacobson entered the fray. He filed a proof of claim for the legal services he

performed representing Richert in the Northern District of Illinois litigation. Richert objected to Jacobson's claim. When Jacobson failed to respond to the objection before the thirty-day deadline, Richert moved to strike his claim. Jacobson then requested an extension of time to respond, because he had not yet obtained counsel and was absorbed with family health issues. The bankruptcy court found that Jacobson's failure to respond was the result of excusable neglect and caused no prejudice to Richert. The court, therefore, granted the extension.

Richert appealed these decisions to the district court. The district court affirmed the conversion from Chapter 13 to Chapter 7, the denial of the motions to reconsider and to reconvert the proceeding, and the allowance of Murphy's and White's claim. Additionally, the court held that it did not have jurisdiction to review the extension of time granted to Jacobson.

## II

We are obliged to sua sponte consider our jurisdiction, which we review de novo. *Rosell v. VMSB, LLC*, 67 F.4th 1141, 1143 (11th Cir. 2023). The issue of jurisdiction "cannot be waived" and cannot be "conferred upon the court by the parties." *Univ. of S. Alabama v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999) (quotation omitted).

When we hear appeals from district courts' review of bankruptcy proceedings, we review "factual findings for clear error, and the district court's determinations of law" de novo. *Englander v. Mills* (*In re Englander*), 95 F.3d 1028, 1030 (11th Cir.

1996).  We review denials of rehearing only for abuse of discretion. *Kellogg v. Schreiber (In re Kellogg)*, 197 F.3d 1116, 1119 (11th Cir. 1999).

### III

Because it concerns the power of the courts to hear a claim, we must first assure ourselves of our jurisdiction.  The distinction between "interlocutory" and "final" orders is critical here.  This Court has no jurisdiction over the former.  *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 589 U.S. 35, 39 (2020); *see also Slobodinsky v. Salkin (In re Saber)*, 264 F.3d 1317, 1324 (11th Cir. 2001).  A bankruptcy order is "final" when it "ends the litigation on the merits and leaves nothing for the court to do but execute its judgment."  *In re Saber*, 264 F.3d at 1324 (quotation omitted).

"In the bankruptcy context, however, finality is not limited to the last order that concludes an entire bankruptcy case."  *United States v. Hillsborough Holdings Corp. (In re Hillsborough Holdings Corp.)*, 116 F.3d 1391, 1393 (11th Cir. 1997).  To avoid appeals that overturn decisions on which months or years of bankruptcy actions were based, Congress permits review of orders that resolve "a 'proceeding'—even if it does not resolve the entire case."  *Al Zawawi v. Diss (In re Al Zawawi)*, 97 F.4th 1244, 1250 (11th Cir. 2024).  Such orders involve (1) "a discrete procedural sequence, including notice and a hearing," and (2) occur "before and apart from the proceedings on the merits of creditors' claims."  *Id.* at 1251 (quoting *Ritzen*, 589 U.S. at 43).

The bankruptcy court's decision to grant Jacobson additional time to respond is interlocutory. It does not dispose of any "claim" or "proceeding." *See Barben v. Donovan (In re Donovan)*, 532 F.3d 1134, 1137 (11th Cir. 2008). Even though disallowing Jacobson's request for an extension may have resulted in the denial of his claim, that does not make the court's decision to grant the extension a final order. An extension, instead, is an order that "merely preserves the status quo." *Smith v. First Nat'l Bank of Albany (In re Smith)*, 735 F.2d 459, 461 (11th Cir. 1984). Far from ending any portion of the litigation, the order permitted a claim to continue to consideration of the merits. As a result, we lack jurisdiction to hear the appeal of this order.

In contrast, we have jurisdiction to hear Richert's appeal of the bankruptcy court's decision to convert the proceeding. Converting her bankruptcy from one conducted under Chapter 13 to one conducted under Chapter 7 was a "discrete procedural sequence." *Ritzen*, 589 U.S. at 43. Indeed, the bankruptcy code requires "notice and a hearing" before a proceeding is converted. 11 U.S.C. § 1307(c); *Ritzen*, 589 U.S. at 43. Moreover, the form that a bankruptcy proceeding takes is "before and apart" from the merits, as it regards control over the debtor's assets during the pendency of the proceeding and what assets are shielded from creditors. *Ritzen*, 589 U.S. at 43; *see also Slater v. U.S. Steel Corp.*, 871 F.3d 1174, 1179 (11th Cir. 2017). This conclusion is "in accordance with all other courts of which we are aware that have considered the issue." *Rosson v. Fitzgerald (In re Rosson)*, 545 F.3d 764, 770 (9th Cir. 2008) (collecting cases).

The same is true for Richert's appeal of the order allowing Murphy's and White's claim. Allowed claims are those approved by the court to take part in the distribution of the debtor's estate. 11 U.S.C. § 726; *see also Ziino v. Baker*, 613 F.3d 1326, 1328 (11th Cir. 2010). The order held that the claim was "valid and allowed in its entirety." Allowing a bankruptcy claim, therefore, leaves little "for the court to do but execute the judgment." *In re Al Zawari*, 97 F.4th at 1250 (quotation omitted).

## IV

We now turn to the merits where we have jurisdiction. *First*, Richert argues that the bankruptcy court erred when it converted her case to a Chapter 7 proceeding. *Second*, she contests the bankruptcy court's allowance of Murphy's and White's claim, which she argues violated her constitutional rights. We disagree and therefore affirm both orders.

### A.

A bankruptcy court may convert a proceeding to one conducted under Chapter 7 "for cause." 11 U.S.C. § 1307(c). Although courts are not limited to the statute's "nonexclusive" list, expressly enumerated causes include "unreasonable delay by the debtor that is prejudicial to creditors," "failure to file a plan timely," and "denial of confirmation of a plan." *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 373 (2007); 11 U.S.C. § 1307(c)(1), (3), (5).

Here, Richert argues that the bankruptcy court erred in converting her proceeding based on her alleged bad conduct and

lack of sufficient assets to fund a Chapter 13 plan. The record shows that she consistently failed to comply with bankruptcy court orders or to substantiate her claimed income and assets. She redacted (without approval) nearly all the content of the documents she submitted to verify her interests in various properties and trusts, failed to respond to pertinent questions at the bankruptcy examination ordered by the court, and filed admittedly "inaccurate" and "incomplete" amended schedules. Additionally, the court in the related Illinois litigation found that she had previously violated her fiduciary duties with "reprehensible conduct" that "was committed with an evil mind."[1] The bankruptcy court could rely on a finding of bad faith conduct to support its decision to convert the proceeding. *See Marrama*, 549 U.S. at 367–72. These factors more than sufficiently justify the bankruptcy court's decision to convert Richert's proceeding. *See also Piazza v. Nueterra Healthcare Physical Therapy, LLC (In re Piazza)*, 719 F.3d 1253, 1261–66 (11th Cir. 2013).

Richert's primary argument appears to be based on preclusion. She argues that a judgment from the related litigation in Illinois bound the bankruptcy court to recognize Richert's

---

[1] Although Richert contested some of these factors before the district court, she does not meaningfully challenge them here on appeal. But in any event, her arguments are incorrect. The debtor's failure to comply with court orders, provide accurate schedules, and to verify assets required to fund a Chapter 13 plan are relevant bases for finding "good cause" to convert. *See* 11 U.S.C. § 1307(c); *see also Piazza v. Nueterra Healthcare Physical Therapy, LLC (In re Piazza)*, 719 F.3d 1253, 1261–63 (11th Cir. 2013).

23-12840               Opinion of the Court                    9

claimed ownership of certain property in Illinois when considering whether she had sufficient assets to proceed under the Chapter 13 plan. Although there is substantial reason to doubt Richert's characterization of the Illinois decision and whether res judicata applies, we need not reach the merits of this argument here. "To obtain reversal of a district court judgment that is based on multiple, independent grounds, an appellant must convince us that every stated ground for the judgment against [her] is incorrect." *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014). The bankruptcy court converted the proceeding because of the deficiency of Richert's verified assets, her failures to comply with court orders, and her demonstrated bad faith. Her record of non-compliance and bad faith sufficed to support the conversion regardless of the status of the assets tied to the Illinois litigation. *See In re Piazza*, 719 F.3d at 1261–66. For similar reasons, the bankruptcy court did not err in denying Richert's motions to reconsider this order and to reconvert the proceeding back to Chapter 13. [2]

---

[2] Richert also contends that she does not fall under the definition of "debtor" for purposes of Chapter 7 because she still qualifies as a debtor under Chapter 13. She offers no support for this assertion. The statute merely requires that the bankrupt individual qualify as a "debtor" under Chapter 7 in order for the proceeding to be converted. 11 U.S.C. § 1307(g). Chapter 7, however, contains no requirement that the individual not qualify as a debtor under a separate chapter. *See* 11 U.S.C. § 109(b).

**B.**

Richert's appeal of the bankruptcy court's decision to allow Murphy's and White's claim fairs no better.  She asserts that this decision "violated" her "constitutional rights to equal protection and due process" and her "right to access to the courts."  Richert provides no further explanation and cites no authority.  This conclusory and unsubstantiated argument is insufficient to preserve this issue on appeal.  "We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority."  *Sapuppo*, 739 F.3d at 681.  Because she "does not otherwise develop the argument in" her briefs, Richert's bare assertion that the bankruptcy court's handling of Murphy's and White's claim violated her constitutional rights has been abandoned.  *FTC v. Simple Health Plans LLC*, 58 F.4th 1322, 1330 (11th Cir. 2023).

\*   \*   \*

We **DISMISS** for lack of jurisdiction Richert's appeal of the order extending time to respond, and we **AFFIRM** the conversion of the proceeding to Chapter 7 and the allowance of Murphy's and White's claim.